**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SHAWN MICHAEL USSIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:25-cv-00909** |
| | ) | |
| **FRANK BISIGNANO,** ***Commissioner of Social Security*****,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION AND ORDER

Before the Court is a Report and Recommendation ("R&R") issued by the Magistrate Judge that recommends the Court deny Shawn Michael Ussia's motion for judgment on the administrative record. (Doc. No. 24). Ussia filed objections to the R&R (Doc. No. 29), to which the Commissioner of the Social Security Administration responded (Doc. No. 30), and Ussia replied (Doc. No. 31). For the following reasons, Ussia's objections will be overruled, and the R&R will be approved and adopted.

## I. Background

The Court will not repeat the entire factual background and procedural history of this case because it is aptly set forth in the R & R. (Doc. No. 24 at 1–4). In short, the Social Security Administration ("SSA) denied Ussia's application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. Ussia applied for benefits after sustaining a gunshot wound to the head and claiming physical and mental limitations. His claims were denied on initial consideration, on reconsideration, and

on consideration by the Administrative Law Judge. The Appeals Counsel vacated the ALJ's decision and remanded.

On remand, a different ALJ denied Ussia's claim. The ALJ found that Ussia had certain "severe impairments[,]" but nonetheless, "there are jobs that exist in significant numbers in the national economy that" he can perform. (Doc. No. 8 at 27, 38). The Appeals Counsel denied Ussia's second request for review, and he now seeks judicial review of the SSA's final decision.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." The district court judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id. Only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are considered "proper" for the district court's consideration. Fed. R. Civ. P. 72(b)(2).

"The failure to properly, specifically, and timely object to a report and recommendation releases the Court from its duty to independently review the matter." Lawhorn v. Buy Buy Baby, Inc., No. 3:20-CV-00201, 2021 WL 1063075, at *1 (M.D. Tenn. Mar. 19, 2021) (citing Frias v. Frias, No. 2:18-cv-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019)). When objections are not properly raised, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate [judge] useless." Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991). Accordingly, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks." Id.

## III. Ussia's Objections

Ussia raises two objections and argues that the Magistrate Judge wrongly concluded that: (1) the ALJ properly evaluated the four medical opinions of record and (2) there is substantial evidence supporting the ALJ's residual functional capacity ("RFC") assessment finding. Ussia frames the second objection specifically "with regards to dexterity." (Doc. No. 29 at 2).

Taken together, Ussia asks the Court to focus on two hand-and-finger dexterity tests—and only on those two tests and on no other exam or opinion in the administrative record. The Court should then fault the ALJ for not affording them controlling weight, and next fault the Magistrate Judge for failing "to recognize how vital this objective evidence of dexterity testing is." See id. at 3. This the Court will not do.

Ussia argues that the ALJ did not properly evaluate the "opinions of state agency medical consultants Drs. Bomer and Foster, consultative examiner Paul J. Niner M.D., and Craig Critchfield, MA, ATC, CEAS[.]" (Doc. No. 29 at 1). These four medical professionals evaluated Ussia and opined that he has no manipulative limitations. Dr. Ninar conducted a physical exam and found Ussia had a "normal ability to grasp and manipulate with left and right hands." Id. at 1045. Drs. Bomar and Foster conducted an RFC and found he had no exertional, postural, or manipulative limitations. Id. at 277, 332-33. And Mr. Critchfield conducted a functional capacity exam and found that Ussia "had no significant limitations with reaching, handling, or fingering." Id. at 1250. Proper evaluation of these medical opinions, the Court is told, means rejecting every one of them and substituting the lay opinion of Mr. Ussia.

In a thorough and careful discussion, the ALJ properly articulated the persuasiveness of these medical opinions. Id. at 30-38. Most importantly, he articulated his conclusions on whether the medical professional had "sufficient justification for their *own* conclusions." Elizabeth A. v. Comm'r of Soc. Sec. Admin., No. 2:22-CV-02313, 2023 WL 5924414, at *4

(S.D. Ohio Sept. 12, 2023) (emphasis in original). The ALJ also considered the consistency of each opinion in the context of the others and the record as a whole. The Magistrate Judge likewise evaluated the ALJ's determinations in detail. (Doc. No. 24 at 1-3, 8-11). Ussia's conclusory, 5-page objections simply rehash his prior arguments and regurgitate what he already presented to the Magistrate Judge. See VanDriver v. Martin, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004) (citations and quotations omitted); see also Jarbou v. JPMorgan Chase Bank N.A., 611 F. App'x 342, 343 (6th Cir. 2015) ("rehashed" argument insufficient to raise a proper objection). He does not explain how the Magistrate Judge was wrong. Nor does Ussia explain how the ALJ was wrong, other than by repeatedly pointing to the evidence he finds, in his own esteemed opinion, most persuasive.

The critical question before the Magistrate Judge was whether the ALJ's RFC determination was supported by substantial evidence and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); see also Walters v. Comm'r of Social Sec., 127 F.3d 525, 528 (6th Cir. 1997). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficen[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla ... and means only ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Co., 305 U.S. at 229). "[I]f substantial evidence supports the ALJ's decision, [the c]ourt defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" Blakley v. Comm'r of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

A court "may look to portions of the record that the ALJ did not discuss or cite, but we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Peterson v. Comm'r of Soc. Sec., 552 F. App'x 533, 538 (6th Cir. 2014) (internal quotations and citations omitted). Ussia understandably points to evidence in the record that supports his claim, but merely "marshaling evidence to suggest that he is disabled" is insufficient. Id. at 540. To prevail, he must demonstrate that the ALJ's "determination that he was not disabled is not supported by substantial evidence." Id.; Blakley, 581 F.3d at 406 ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.")

Ussia cherry-picks two dexterity examinations that Mr. Critchfield conducted on Ussia—the Minnesota Dexterity Test and the Purdue Pegboard Test. Id. at 3. These tests, in isolation, might indicate that Ussia's fine dexterity skills were poor and that he had very low gross motor skills. (See Doc. No. 8 at 1188). The Court does not review evidence in isolation. Nor did the ALJ. Furthermore, Mr. Critchfield *himself*, the medical professional who conducted the tests, concluded that Ussia "had no significant limitations with reaching, handling, or fingering." Id. at 1250. As characterized by the Commissioner, Ussia argues that the "Court should reweigh the test results and find that the dexterity testing justified greater manipulative limitations than the individual who performed the testing." (Doc. No 30 at 5). This, also, the Court will not do.

## IV. Conclusion

Accordingly, the Report and Recommendation (Doc. No. 24) is **APPROVED AND ADOPTED**. Ussia's motion for judgment upon the administrative record (Doc. No. 18) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**. This is a final order. The Clerk shall close this case.

IT IS SO ORDERED.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE